14 N.J. Super. 261 (1951)
81 A.2d 808
PETER GAETA, PETITIONER-RESPONDENT,
v.
SCOTT PAPER CO., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 7, 1951.
Decided June 6, 1951.
*263 Before Judges EASTWOOD, BIGELOW and SCHETTINO.
Mr. Felix Bigotto argued the cause for the petitioner-respondent (Mr. Harold Krieger, attorney).
Mr. Sidney M. Schreiber argued the cause for the respondent-appellant (Messrs. McKeown, Schreiber, Lancaster & Demos, attorneys; Mr. Roger F. Lancaster, on the brief).
*264 The opinion of the court was delivered by EASTWOOD, J.A.D.
The petitioner, Peter Gaeta, suffered a compensable accident. Prior to the filing of his claim petition, the employer had paid four-sevenths of a week temporary disability. Gaeta's claim petition is silent as to the relief he was seeking  it did not state whether he sought an award for either temporary or permanent disability, or both. The Division of Workmen's Compensation of the Department of Labor and Industry (hereinafter referred to as "the Division"), awarded the employee four-sevenths of a week temporary disability and two and one-half per cent of total permanent disability neurologically. In his appeal to the Hudson County Court from the Division's award, the only ground asserted by the employee was "insofar as permanent disability was concerned." The county court increased the temporary disability from four-sevenths of a week to three weeks and partial permanent disability from two and one-half per cent to five per cent neurologically. The employer appeals from the whole of the county court's judgment.
With respect to the award for temporary disability, at the argument of the appeal before this court, it was conceded that there was no oral argument before the county court; that the appeal was submitted on briefs and that the briefs only raised and discussed the question of partial permanent disability. The employee contends that R.S. 34:15-66 requires the county court to try the appeal "exclusively on the transcript of the record and testimony" and that the county court "shall in a summary manner decide the merits of the controversy." Per contra, the employer argues that notwithstanding the provisions of R.S. 34:15-66, the county court was limited in its consideration and determination of the appeal to the only ground of appeal asserted by the employee, to wit: the extent of the partial permanent disability. It is a rule of general application that a party shall not be heard in an appellate court on a point not raised or considered in the court below. Breheny v. Essex County, 134 N.J.L. 129 (E. & A. 1946). The question here, however, *265 is whether in view of the provisions of R.S. 34:15-66, the county court was warranted in considering and reversing the Division's award for temporary disability notwithstanding the fact that the question was not raised by the employee's appeal nor was it argued in the respective briefs of the parties. It is well established that the hearing of an appeal from the Division is, under the authority of R.S. 34:15-66, a trial de novo upon the record as presented and is for the purpose of providing a new mind for the consideration of the testimony adduced. Huber v. New England Tree Expert Co., 137 N.J.L. 549 (Sup. Ct. 1948); affirmed 2 N.J. 53 (1949). In the Huber case, it was held that the Court of Common Pleas in reviewing a record in a workmen's compensation case, committed error by directing the inclusion of issues in the pleadings contradictory to the theory and proofs upon which the case was tried and directing what would be in essence a re-trial on amended pleadings. In the case of Pasquale v. Clyde Piece Dye Works, Inc., 120 N.J.L. 557 (Sup. Ct. 1938), when the hearing before the Division had been conducted upon a theory which disregarded the precise issue raised by the pleadings, without objection, the defeated party is estopped from urging as error a ruling of the trial court based upon the pleadings but which as applied to the issue as tried is correct. While the Huber and Pasquale cases are not altogether analogous to the case sub judice and although R.S. 34:15-66 has been construed to authorize and direct a trial de novo before the county court, it is manifestly prejudicial to the rights of the employer that, when a ground of appeal is not asserted, discussed or argued by the appellant in prosecuting his appeal, the county court may of its own volition consider such an unasserted ground of appeal and reach a determination contrary to that of the Division. In the instant case, we think the employer was lulled into a sense of inaction when the appeal was submitted on briefs without any reference to that part of the Division's judgment, and the employee's failure to indicate any discontent therewith warranted the employer's assumption that *266 the employee was entirely satisfied with the Division's finding. At all events, we think that we should exercise the authority granted us under Rule 1:2-20 and Rule 4:2-6, and find new or amended findings of fact with respect to the county court's judgment on this question. The employee testified that he was unable to resume work for several weeks after his accident. This testimony was sharply contradicted by his attending physician, Dr. Yeaton, who specifically stated that the employee was able to return to work on May 4th, and so informed him. We are impressed with the doctor's testimony. Therefore, we find that the employee's temporary disability covered a period only of four-sevenths of a week.
In considering the employer's appeal from the county court's award for partial permanent disability, we are not unmindful that determinative weight in the first instance must be accorded to the factual findings of the county court and, on our approach to a review of the county court's judgment, we must necessarily proceed on that premise although empowered under Rule 3:81-13 to review the facts and make independent findings thereon (Cf. Rules 1:2-20 and 4:2-6). We will give the determinative weight to the county court's findings heretofore mentioned and will not reverse unless satisfied from our examination of the record that the interests of justice so require. Lipscombe v. Loizeaux Lumber Co., 12 N.J. Super. 276 (App. Div. 1951). It has long been recognized that the trial judge has the distinct advantage of the personal observation of the witnesses, and his conclusions, when based upon competent evidence, will not be lightly disturbed. Morgan v. Letwenske, 6 N.J. Super. 67 (App. Div. 1949). As Mr. Justice Heher stated, speaking for the Supreme Court in the case of Gilbert v. Gilbert Machine Works, Inc., 122 N.J.L. 533 (1939), at pp. 538, 539:
"Moreover, the credibility of the witnesses on the crucial point of inquiry was sharply in issue; and, in the appraisement of the evidence adduced before the bureau, it is to be borne in mind that the *267 deputy commissioner had the distinct advantage of personal observation of the witnesses. The demeanor of the witness is ofttimes a factor of major importance in determining the probative value and weight of his evidence. The tone of voice, the readiness or reluctance with which questions are answered, his reaction to surprise and unexpected inquiries, his carriage and expression, his seeming interest or lack of it, are all circumstances of consequence known only to the judicial officer in whose presence the witness testifies; and so, there is a natural hesitation on the part of the appellate tribunal, confined as it is to the written word, to disturb factual conclusions of the judicial officer to whom the evidence has been orally presented."
Here, it is undisputed that all of the residual effects of the employee's injury are subjective. This court, as well as the Division and the county court in reviewing the facts, are called upon to analyze and weigh the testimony of the employee and the medical testimony and reach a conclusion therefrom based almost entirely on the employee's statements of his subjective complaints. The medical doctors, in expressing their opinions as to whether Gaeta had suffered any permanent disability and the extent thereof, necessarily had to rely upon the history of Gaeta's injury and his statements pertaining thereto. It is difficult, indeed, to measure the extent of such permanent disability. In this case, as in all similar cases, we are confronted with conflicting testimony of medical experts as to what, if any, is the percentage of the total permanent disability suffered. Gaeta testified that he suffered headaches that sometimes lasted several days; that he would get those headaches several times a week; that he could not sleep at night. At another point in his testimony, he stated that he had not had any headaches or dizzy spells for "a few weeks"; that he returned to work approximately the second week of June, 1949, and has continued to work for defendant ever since; that he is working 48 hours a week; that he has not seen a physician since his discharge from treatment by Dr. Yeaton in May, 1949, with the exception of examinations by Dr. Ehrlich, Dr. Siegel and Dr. Visconti, for the purpose of testifying. Dr. Visconti examined the petitioner orthopedically and inasmuch as all experts were in agreement that Gaeta suffered no permanent organic *268 disability, a discussion of his testimony is unnecessary. Dr. Siegel, testifying for petitioner, stated that his estimate of ten per cent of total permanent disability was in part based on the petitioner's subjective complaints given him on May 31, 1949, and that as his complaints diminished it would indicate an improvement of his condition. Dr. Yeaton, the treating physician, testified that he had examined and observed the petitioner from the date of the accident until his discharge from treatment and that he concluded that Gaeta suffered no permanent disability. Dr. Ehrlich testified for the defendant that he found little, if any, permanent disability, and recommended a two per cent reserve to cover persisting complaints. As stated, all of petitioner's complaints are subjective in nature and uncorroborated and the record is devoid of any testimony regarding home treatment or medication in the form of aspirin tablets or other such home remedies normally taken by persons experiencing headaches and dizziness.
The testimony proffered by the parties being in controversy, the credibility of the witnesses is an issue. Gilbert v. Gilbert Machine Works, Inc., supra. Our independent review of the record convinces us that the proofs do not justify an award for the employee's partial permanent disability in excess of two and one-half per cent of total.
The judgment of the county court is reversed and the employee is awarded four-sevenths of a week temporary disability and two and one-half per cent partial permanent disability.