99 N.J. Super. 416 (1968)
240 A.2d 182
LENA HANDLEMAN, PETITIONER-RESPONDENT,
v.
MARWEN STORES CORPORATION, d/b/a KAYBEE STORE, AND UNITED STATES CASUALTY COMPANY, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 19, 1968.
Decided March 7, 1968.
*417 Before Judges SULLIVAN, FOLEY and LEONARD.
Mr. William J. Straub argued the cause for appellant (Mr. William A. Davenport, attorney).
Mr. Myron W. Kronisch argued the cause for respondent (Messrs. Roskein, Kronisch & Felzenberg, attorneys).
The opinion of the court was delivered by LEONARD, J.A.D.
In this workmen's compensation case Marwen Stores Corporation (Marwen), the employer, and its insurance carrier appeal from the County Court which entered judgment in favor of petitioner and reversed a determination of the Division of Workmen's Compensation dismissing petitioner's widow dependency claim.
Preliminarily, we find petitioner's contention that this appeal was not filed in time to be without merit. Since the retroactive filing notation on the judgment was not made pursuant to court order, we hold that the judgment was *418 entered on September 13, 1967, the date upon which it was physically recorded on the clerk's docket. Thus the notice of appeal, filed on October 3, 1967, was timely.
Harry Handleman, petitioner's deceased husband, aged 68 at the time of his death, for some time had been employed by Marwen as a collector. On February 1, 1966, while engaging in his collection activities, decedent was struck by a motor vehicle as he was getting into his automobile on Hillside Avenue, Newark. The other vehicle struck the driver's door, allegedly causing the decedent's legs to be pinned between the door and the sill of his own car. After the accident decedent drove to the Newark City Hospital where he was treated for bruised legs, given medication for pain and released. He returned to work the next day and continued to work until February 5, 1966, the day before his death.
On the evening of February 6, 1966, at or about 7:30, decedent visited the apartments of Rosa Price and her downstairs neighbor Garfield Johnson, allegedly to make collections. He remained at the Price apartment until 11 P.M., playing gin rummy with her children. Shortly after he left the Price apartment, he was found lying on the floor of the furnace room of the apartment house by Johnson. At that time decedent's face was purple "and getting darker," and Johnson could not find any sign of a pulse or heartbeat. The emergency police squad was called and Handleman pronounced dead.
Petitioner's medical expert, Dr. Murray Pine, a general practitioner for about 4 1/2 years, testified in response to a hypothetical question that decedent's death was caused by a "pulmonary thrombus formation" ("pulmonary embolism") as a result of a blow to his legs sustained in the February 1 accident.
The employer disputed this theory. The death certificate, signed by Assistant County Medical Examiner Dr. Thomas A. Santoro and based upon his postmortem examination of Handleman, stated that the cause of death was an "occlusive coronary arteriosclerosis." Marwen's expert, Dr. Jack S. *419 York, a specialist in internal medicine, in response to a hypothetical question testified that Handleman's death was caused by an "acute coronary occlusion" not related to the February 1 accident. York's conclusions were in large part based upon Santoro's testimony regarding the postmortem examination.
The Division dismissed the petition. The compensation judge characterized the medical testimony as "absolutely opposing" but felt that the employer's theory was the more logical. He concluded that the employer had demonstrated that the death was unrelated to the accident of February 1.
Petitioner appealed to the County Court. After reviewing the record the trial judge felt that the conflicting medical evidence adduced in the Division "did not sufficiently yield to analysis" and that additional medical testimony was therefore mandatory if the issues were to be resolved harmoniously with the aims of justice. He indicated that he would adopt a procedure under R.R. 4:25A and engage a cardiovascular specialist to testify as an impartial expert. The judge stated he would prepare and submit a hypothetical question to the specialist and then allow both attorneys cross-examination. He justified that proposal, upon the following grounds among others: the death of the compensation judge who had heard the case in the Division; the convenience of the parties, and the policy favoring the prompt dispatch of judicial business.
Over appellant's continuing objections to this procedure, Dr. Sol Parent, a qualified cardiologist, was selected by the trial judge and testified in response to a hypothetical question previously submitted to him in a letter sent by the judge. He concluded that decedent's death was the result of an "acute pulmonary embolism" which, in turn, was caused by injury to decedent's legs sustained in the accident of February 1.
Thereafter the trial judge, having "absolute confidence in the opinion of Dr. Parent" and feeling that "he [Dr. Parent] satisfied the Court's need for explanatory information *420 concerning the cause of death," concluded that the death was caused by a "pulmonary embolism" emanating from the "crush type injury" decedent received in the accident of February 1.
Appellant contends that on an appeal to the County Court in a workmen's compensation case, the hearing must be based exclusively on the transcript of the record and the testimony below, and therefore the county judge was without legal authority to appoint Dr. Parent as an impartial expert and to determine the cause upon his testimony. In advancing this point they rely upon Huber v. New England Tree Expert Co., 137 N.J.L. 549 (Sup. Ct. 1948), affirmed 2 N.J. 53 (1949); Folsom v. Magna Manufacturing Co., 14 N.J. Super. 363, 367 (App. Div. 1951), and Gagliano v. Botany Worsted Mills, 13 N.J. Super. 1 (App. Div. 1951).
Petitioner contends that the above cases are not presently controlling. She argues that at the time they were determined the then existent version of N.J.S.A. 34:15-66 (L. 1945, c. 74, § 17) provided: "The trial of the appeal [in the County Court] shall be based exclusively on the transcript of the record and testimony * * *." However, she asserts that this phrase was eliminated by amendment in 1953 (L. 1953, c. 33, § 57). Since then the mandate appears only in R.R. 5:2-5(d). Thus, her position is that since the scope of the County Court's review stems from a court rule, and not a statute, the County Court may exercise original jurisdiction to "facilitate business and advance justice" pursuant to R.R. 1:27A.
However, the deficiency in petitioner's position is that she ignores N.J.S.A. 34:15-49 which provides that the Division "shall have exclusive original jurisdiction of all [workmen's compensation] claims * * *" (emphasis added). R.R. 5:2-5(d) is merely a statement of the obvious corollary to that legislative pronouncement. Since the Division has statutory exclusive original jurisdiction, the trial of the appeal in the County Court must be "based exclusively on the exhibits and the transcript of the record and testimony."
*421 In compensation cases the appeal to the County Court is a "de novo review." Bollerer v. Elenberger, 50 N.J. 428, 434 (1967). It is a review "on the record." Close v. Kordulak Bros., 44 N.J. 589, 596 (1965). The County Court, in its examination of the Division record, is obligated "to bring a new mind to the case and conscientiously to reach its own independent determination." Id., at 598.
In Bollerer, 50 N.J., supra, at p. 434, our Supreme Court criticized the County Court for disposing of an issue of causal relationship which had not been passed upon by the Division. In so doing, the court said:
"In compensation appeals the de novo review by the County Court should extend only to issues which have been resolved by the Division; where it is necessary to decide factual issues not reached by the judge of compensation, the case ordinarily should be remanded for his initial determination."
Petitioner points to the fact that in spite of this language the court in Bollerer did not remand but decided the case because "the interests of justice require that [it] bring finality to these proceedings." 50 N.J., at p. 434. However, this conclusion was reached because the employer throughout the appeals did not object to the County Court procedure and because the petitioner had waited for more than six years for disposition of his case. Here, appellants have objected from the very instant the procedure was suggested and the long delay factor present in Bollerer is absent. Assuming, without deciding, that a remand to the Division was required, prompt disposition of the petition could have been made even though the original compensation judge had died.
Finally, State v. Lanza, 74 N.J. Super. 362, 374-375 (App. Div. 1962), affirmed 39 N.J. 595 (1963), appeal dismissed and certiorari denied 375 U.S. 451, 84 S.Ct. 525, 11 L.Ed.2d 477 (1964), rehearing denied 376 U.S. 935, 84 S.Ct. 697, 11 L.Ed.2d 655 (1964) and Polulich v. J.G. Schmidt Tool Die & Stamping Co., 46 N.J. Super. 135 (Cty. Ct. 1957), are inapposite. Lanza did not involve a *422 compensation appeal, and Polulich merely decided that the Division judge could avail himself of an impartial medical expert.
Based upon all of the above, we conclude that the County Court, in spite of its laudatory motives, erred in expanding the record by appointing an impartial medical expert, having him testify, and then determining the appeal from the Division on that expert's testimony. Therefore, the judgment for petitioner will be reversed and the matter remanded to the County Court for a prompt determination to be made exclusively upon the Division record.
We shall retain jurisdiction and advise counsel if further briefs and oral argument are desired.
Reversed and remanded in accordance herewith. No costs.